### BROWN et al. v. WOODLIFF.

1. Where the owner of land for the term of her own life sues for damage to crops by reason of the construction and maintenance of a mill-dam, and the evidence discloses that she did not cultivate the land and had no crops thereon, she cannot recover, although her adult son, by her license, did cultivate the land for his own benefit, had crops thereon, and they were damaged.

2. The action being also for permanent damages to the land, she might recover for the same to the extent which the value of her life-estate was diminished by the permanent effects of the nuisance; but this could not be ascertained without evidence from which the jury could estimate the difference between the value of her estate before the land was injured and the value of it after the injury. The amount which it would cost to restore the land to its former condition would not be the measure of this difference. The court erred in not granting a new trial. *Judgment reversed.*

June 8, 1892.

Damages. Waters. Life-estate. Before Judge WELLBORN. Hall superior court. July term, 1891.

Mrs. Woodliff sued defendants for damages to her land and loss of crops thereon, caused by the maintenance of a dam by defendants below the land, across or partly across a creek which flowed through her land. She obtained a verdict for $248. Defendants moved for a new trial, which the court held should be granted unless plaintiff would write off $148. This plaintiff did, and the motion was overruled, to which defendants ex-

cepted.   The grounds of the motion were, that the ver-
dict was contrary to law, evidence, etc., and excessive;
and that the court erred in charging :

"I charge you that if you are satisfied from the evi-
dence in this case that she has a life-estate in this land,
that would constitute her such owner as would author-
ize her to sue for any damage done to the land.   The
right of a life-tenant is to have and to enjoy the use and
possession of the land just like the owner of the free-
hold would, so long as life lasts, and an estate of that
sort is liable to damage just as a less or greater estate
would be.   Now such injury to land as might be termed
permanent and lasting would be greater to the owner of
the fee, that is, to the owner who had a title to the land
forever in fee simple, than it would be to the owner who
had simply a life-estate in the land.   But I charge you
that the owner who had a life-estate in the land had a
right to enjoy it free from any sort of injury or damage
from anybody, from the time they obtain such title as
long as they live, and any damage to such estate may
be recovered by the life-tenant."  · The error assigned
was, in charging that the life-tenant could recover any-
thing for permanent damages, the evidence having
shown that plaintiff had only a life-estate in the land.

"If any trespass has been committed upon her land, I
charge you that she would be entitled to recover such
amount as would restore the land to the condition that
it was when the injury was done, that is, to such condi-
tion as it was in her hands before the injury was done."
The allegation of error was the same as above set forth.

"It has been insisted in this case that she would have
no right to recover anything because of her crops.   I
charge you that if she owns a life-interest in the estate,
she would be entitled to the produce of the land each
year, unless she alienates her right to the produce, and
if she has not, and you are satisfied she has only been
damaged in this way, you would give her such damage

as you believe she has sustained by reason of ·damage to crops only." The error alleged was, in charging that plaintiff could recover anything on account of damages to the crops, it being alleged in the motion that the evidence showed that the land was in possession of and cultivated by A. H. Woodliff, the remainderman, who occupied it as her tenant and who paid no rent for the place except the State and county tax annually due thereon, thus showing that the crops belonged to the tenant and not the plaintiff, and that the right to sue was in him and not in plaintiff. The evidence showed that A. H. Woodliff lived on the land, and his mother, the plaintiff, did not. The land belonged to his mother, and he paid taxes on it and had all he could make. He cultivated the land, lived upon it and managed it. By · the will of the husband of plaintiff, the land was devised to plaintiff for life and after her death to be divided between A. H. Woodliff and Josiah Woodliff, testator's sons. The will required that the sons should pay all State and county taxes on the lands until the death of Mrs. Woodliff.

" You will make your finding in one sum, that is to say, though you may believe the life-tenant is entitled to something for permanent injury to the land, that is, such injury as she will have to repair hereafter· if she should repair the land, you will estimate such damage in addition to the value of the crops. If you estimate·, that in addition to the crops, you simply add them together for the purpose of arriving at the amount of damages you should find for the plaintiff." The error alleged as to this charge was, that plaintiff could recover for permanent damages to the land, and the alleged intimation of the court that the jury should find a verdict for damages to the crops.

S. C. Dunlap and F. M. Johnson, for plaintiffs in error.

J. B. Estes, H. H. Dean and M. L. Smith, *contra*.